Judge Marcus and I are delighted to have a very distinguished jurist with us sitting today and Friday. He is a circuit judge on the Tenth Circuit Court of Appeals and he is a scholar and a gentleman and a superb jurist. Glad to have you with us. Thank you. Privilege to be here. The first case is Garth Anderson. Mr. Bradley. You may proceed. Morning, Your Honors. And may it please the Court, my name is Jim Bradley and together with Ninah Fields Parade at counsel's table, we represent Plaintiff Appellant Garth Anderson. This appeal is about Georgia law as it pertains to property insurance contracts. I'm going to first address the court's legal error, the district court's legal error, which we see as a critical issue in this appeal, and then I'll address the issues raised in defendant's brief to the extent the court has questions about them, though I will note at the outset defendant's brief is primarily focused on issues that the district court never reached because it bypassed them as a result of its legal error. Georgia law has been clear for over 90 years now that the proper measure of damages in absent a valid exclusion, a policy that covers direct physical loss covers diminished value. This is a minority position among the states, but there's no question about it under Georgia law as was made clear by the Supreme Court of Georgia in Mabry and again on a certified question from this court in Royal Capital. What is also clear under Georgia law as specifically set forth in Mabry is that where a policy covers diminished value, once an insured reports a loss, the insurer must assess for diminished value and at the end of the adjustment process either affirm the presence of this diminished value and pay it or deny the presence of diminished value to its insured. The only relevant question as to whether an insurer has to assess for diminished value is whether the type of damage at issue has the potential to cause diminished value. And while the district court did not reach that question, there is more than enough evidence in the record about the potential for mold and water damage, which is the damage at issue in this case, to cause diminished value in order to survive summary judgment. The evidence is outlined in our opening brief at pages 7 to 8 and 22 to 24. I won't go through it unless you have questions about it, but I will say that defendant seems to take the position in its brief that the only way for us to survive summary judgment on that issue would be if the defendant categorically admitted there was a potential. But that, of course, is not how summary judgment works. A dispute over a question of fact is something that would be decided by the fact finder. Do you not acknowledge and must you not acknowledge that if it is absolutely clear that there is no diminished value on account of stigma, then it would be completely futile to talk about assessment? I don't think so, Your Honor. I mean, it's a contractual right that the insurer is entitled to, and it does have independent value. What is the purpose of performing an assessment if it's absolutely clear there is no damage due to stigma? Okay, and I think embedded in your question is the idea that do they have to perform this assessment in every case, and we're not saying that. You know, what we're talking about in this case is where the damage is raised to the level of an insurance claim and would have to be disclosed. And there's plenty of evidence in the record through our experts that you cannot rule out  But this case arose in a posture where both the fact of diminished value, Belknap, was at issue, and the assessment claim. And it was on summary judgment, and there was no evidence, just assume for purposes of this question, there was no evidence, no probative evidence of diminished value. Why then should the district court engage in a futile inquiry about assessment when we know there's no diminished value? Well, it's a question of even knowing that there is no diminished value. So if the insurer tells the insured that there's no diminished value, that too is valuable information to the insured. You know, that kind of information could affect when and if a homeowner sells their home. It could affect whether they're going to invest additional money into their home. Are those hypotheticals? I mean, because here he did sell the house and he and the buyer and everybody else said that we didn't even consider that problem. So, yeah, he could hypothetically, but we're dealing with a real case here. Right. And the relevant inquiry clear under Georgia law is that you measure the diminished value at the time of the loss. So this sell occurred two years after the loss, during a very hot real estate market. So the fact that some potential homebuyers did not actually make an inquiry doesn't mean there weren't other homebuyers who did. And any time you eliminate people from the market, you are going to affect the market price. Was there evidence about a lot of people that were eliminated from the market and therefore that the sales price was driven down? We didn't have direct evidence in here, nor did we have access to that. We did have... So the record wouldn't support that speculation at all? No, but it was a hot real estate market. The fact of the matter is we didn't try to introduce that evidence because that later sale is of little to no relevance to the issue of whether the house had suffered diminished value at the time of its loss. You know, other factors that impacted that is the insured himself put over $30,000 of his own money into the house to update it at the time he purchased the home. So when you flash forward four years and, you know, a defendant does make a big deal out of them supposedly spending all this money on improvements, but really if you look at the record and in particular the plaintiff's deposition, very little of what the defendant did was actually new compared to what the plaintiff had already done himself. I think the cabinets were new, but other than that, a lot of the replacements were simply replacing items that had already been updated. If you accept, for the purposes of my question, the finding that there was no diminished value, let's just assume that the district court judgment was correct in that regard, was there any concrete, specific, identifiable injury that you sustained that you can point to on account of the failure to conduct this assessment? Well, yeah, the assessment was not done. The plaintiff had to go out and potentially spend, well, he did spend his own money, hired lawyers to try to get this done. I mean, that's the whole point. Our position is that, and as the district court had previously found in the Thompson case, in order to be entitled to a remedy You hired a lawyer to fight over whether the value was diminished or not. You didn't hire a lawyer, did you, for the singular and discrete claim of not conducting the assessment? Am I missing something there? Is there some value that we can attach, standing alone, to an assessment if you accept the proposition that the trial court was right about diminished value? Okay, and the trial court found that we hadn't offered that evidence. I understand. Let's hold aside that for a moment. Okay. Let's just assume that. So assuming there is no diminished value. Yes. Yes. I think the assessment itself, had they done it and informed the plaintiff, did have separate value to the plaintiff. Now, you know, the question is, how do you put a dollar value on it? That's what I'm asking you. Is there any record evidence here that independently established market value in hearing in the failure to perform that part, the assessment? Yes. So we, you know, our way to measure that was what would it have cost the plaintiff to be put in the position he would have been in had the defendant performed its contractual duty? Now, what that would have cost the plaintiff was, you know, and there's some various evidence in there, but to go out and actually hire an appraiser to get a diminished value assessment, you know, costs somewhere in the neighborhood of $2,500. And there is evidence of that in the record. Now, another way of looking at it, it would be to measure, well, what is that actually worth, not what it would cost him to do it. But we didn't reach that question in this case. The posture of the case was the discovery was bifurcated. So we were only dealing with, you know, the question of the plaintiff's at that point failure to assess, and it's, you know, his individual claim. But we think, you know, the failure to assess is a separate, actionable, contractual breach. If the issue was failure to assess for this particular plaintiff, why wouldn't you have put in evidence, even though it was bifurcated, on the value to you of that assessment? Well, we did. We said that the cost of that assessment would have been $2,500. Did you have evidence that this plaintiff actually incurred that cost? Well, yes, as part of the litigation. We had to hire an expert for the plaintiff. So … Is that different? Should we differentiate between litigation costs and costs associated with the sale of the house? At least under the American law, there's quite a difference between historic costs and litigation costs. Right. And I think, you know, as the district court said below, you know, requiring a homeowner to actually prove that he has diminished value in order to be entitled to the assessment, which would have asked that very question, makes no sense, and turns Mabry on its head. So … Mabry was an injunctive case, was it not? Or a declaratory judgment, one of the … Yeah, it was a declaratory and injunctive relief case initially, but there's actually and it's in the record, it's in the defendant's supplemental appendix. But subsequent to the actual Mabry decision, the trial court did award relief on behalf of a class. And I see I'm out of time, unless you have any other questions. Do we have a question? No. Thank you, sir. Mr. Van Ort. Good morning, Your Honors. May it please the Court. I'm Aaron Van Ort, representing American Family. There are two questions before Your Honors. The first question, as you've indicated, is whether there's any probative evidence at all indicating that American Family paid less than the entire amount of Mr. Anderson's loss. The trial court said no, there was no such probative evidence, and we agree with that. The second question is, if there was no evidence of that, in other words, if Mr. Anderson was paid everything he was entitled to, does he still have a claim, a breach of contract claim, for the assessment having been done improperly? And on that point, the trial court answered no, there's no injury from that. He has just asserted that he had an actual cost attributable solely to the failure to assess for diminished value. Is there such evidence in the record? No, there isn't. There are two problems with the plaintiff's attempt to prove damages based on hiring an appraiser. The first problem is a contractual problem. Condition number three in the policy says that if there's a dispute over loss, either side can invoke an appraisal, but if they invoke that right, they each pay for their own appraiser. So that's in the contract. So if he wanted to go to appraiser, he had to do it. It's condition number three. It's at document 53-13, page 14. This is something the district court recognized early in the case in its order on the motion to dismiss. And so to the extent that Mr. Anderson is trying to shift to American Family the burden, the cost of his appraiser, that's directly inconsistent with the contract. If in such a dispute is the failure to assess, I mean, if there had not been a failure to assessment, and then a dispute arises, then is there a new assessment that is done, or does the insurance company rely on its prior assessment? No, if there's a dispute over the assessment of amount of loss, what happens is you go to a lawsuit just like this, and you figure out who is right. And if it paid less than the loss, then it's ordered to pay more, and if it paid the whole loss, there isn't any claim. I mean, this is the basic fact of these contracts in Georgia laws, that the point of this is to get paid for the whole loss. And sometimes and often a plaintiff in a homeowner's insurance case will say, well, you didn't do the adjusting quite right, or you should have done this or that, but if you get to the bottom line and they were paid everything they were supposed to be paid, there's no interest in multiplying litigation over that. And for that matter, other insureds in Georgia have no interest in making American family go do costful things to no purpose. And that's the problem. But I wanted to get to the second problem with them claiming that the cost of an appraisal is the damages. The first problem I said is there's a contractual problem that's inconsistent with what they agreed to. The second problem is that it's a settled principle that damages are measured by the And what they're pointing to is the cost of the appraisal. That's not the measure of the damages. Your Honor said in a question that if it's accepted that Mr. Anderson was paid everything he was entitled to, then an accurate assessment would show that he had been paid everything he was entitled to, it would be no value at all to him, and it would be futile. That's correct. Because remember the assumption we're in. The assumption, and because this is what we think the record shows, is that he was paid everything he was entitled to. In that situation, an assessment, if it were accurate, would show that. It wouldn't be worth anything. And he sure can't get damages on the premise that he was entitled to an inaccurate assessment, which is almost what's being suggested. And the reason this is so clear, and this goes back to the difference between Mabry and Royal Capital. Mabry involved automobiles, and a factual finding in the trial court that was reviewed only for clear error, that in every case of a loss to damage to an automobile, even if you fix it back up, it's worth less. The trial court found that based on state farm admissions. The Supreme Court reviewed it only for clear error, and it said we assume that. By the time you get to Royal Capital, dealing with homeowners, they said it's unusual if after full repairs it's still worth less. And in this case, what happened is you started out here with a $240,000 home. In the deep freeze of January 2014, a pipe burst, and so the value went down. But then all the repairs were made, and it brought the value back up, and what the record showed is that it was $70,000 worth of new things were put in there. This was a 26-year-old house, and so now it has brand new kitchen cabinets instead of All of that, and as we cited, the realtor said, this is a real show stop, this is gorgeous. And so the measure of damage is now it's up here because of these repairs, it's better off. The question is, is there any evidence showing that instead of being worth more afterwards, it was worth less, not even the same? There's just no evidence of that. Well, didn't their expert, Kilpatrick, didn't he state either in his report or in testimony that it is not uncommon for houses, as well as cars, to have a diminution in value after a serious water damage? Yes, Your Honor. So when you say there's no evidence, no evidence, no evidence, wasn't there some evidence? There's no evidence about Mr. Anderson's house. But we're speaking about, we're speaking here on a summary judgment, and so we do have an expert saying, yeah, houses do, I think maybe even generally, suffer damages if there are water damage. Now, of course, that itself could be questioned about its validity, and I take it that Anderson has never been certified, or Kilpatrick has never been certified as an expert. But that issue, I take it, is not for today. But at least I'm suggesting that there was some evidence. Yeah, this is like the difference between general causation and specific causation. You know, in a medical injury, Your Honor, where general causation is that, you know, they establish that a drug or a chemical can cause a certain industry, or injury. Specific causation gets the point, did it cause it in this person? Essentially, what happened here is Mr. Kilpatrick focused all of his energy on the general causation point. Is it possible for stigma to do this? The only point was I think you may have misstated the record to say there was no evidence. Oh, Your Honor, let me be specific. What we think is there's no probative evidence as to Mr. Anderson's house. Well, but if the statement is that houses do suffer damage, and I don't remember his exact language, whether it was can or do or likely, but at least at the summary judgment stage where we simply have to say, is there any evidence that could go to a jury? We do have that statement by him that say houses can or do suffer damages from water. Now, of course, then the cross-examination will be, well, how much water and how big a flood and all those things. But at least for summary judgment, wasn't there that in the record? There was his statement in the abstract, Your Honor. But what he failed to do is he failed to ever bring it down to Mr. Anderson. So we're not dealing that there was no evidence. Now on summary judgment, you are dealing with the fact that there is no credible or no persuasive or no sufficient evidence. And is that the kind of thing that we worry about on summary judgment? Well, if it were a credibility finding, that would be out of line, Your Honor. There's no doubt about that. And it does have to be sufficient to present a jury question. It has to not be speculative. And so here's the best case we cited, the most analogous is the Gwynn case from the 11th Circuit. Let me suggest a better answer that you might have to the judge's question. I'm happy to take your suggestion, Your Honor. The only evidence is Dr. Kilpatrick's evidence of potential value based on the fact that other houses have suffered such diminished value. He also testified, and this is in paragraph 236, in the very next sentence, however, the only, underline only, way to establish value for a particular house is to make a an appraisal before the damage and an appraisal after the damage, which appraisal after the damage would, of course, obviously, evaluate what the damage was, what the repairs were, how successful the repairs were in eliminating any diminished value. And we know that Dr. Kilpatrick did not make such a post-event appraisal. He did not go in the house, he did not look at any of the repairs, he did not make an evaluation of how successful the repairs were or whether, in this case, they completely repaired or they left it with some damage. So the only evidence in the case is that of Dr. Kilpatrick. And his evidence is, yes, potential value, but the only way you could determine actual value is this other way that he acknowledged he did not do. I agree, Your Honor. You have made my response much better than I did. Let me ask you a question about that. Did not the expert offer an opinion in the particular? I was looking at, he may not have done before and after analysis, but at least at a high order of abstraction, he says in response to the American family expert's assertion that Kilpatrick has not offered any reliable basis to support his professional opinion that all class properties have the potential for diminution in value. He says American family ignores the evidence submitted based on the post-repair sale of the Anderson's property, and he concludes, he says the only property I have opined on thus far in this case is that of the Anderson property, which shows approximately 13 percent diminution in value post-repair. He says that, by my count, at least three or four times. He says that in paragraph 13 and paragraph 87 of the rebuttal report. Let me address that specifically, Your Honor. It's true that in Mr. Kilpatrick's opening report, he said that the 2016 sale shows a 13 percent diminution in value. He says it very clearly, and he pegs it to that sale. There are two problems with plaintiffs relying on that. First, the plaintiff's lawyers recanted repeatedly and said that sale, 2016 sale, is irrelevant. So the one thing he specifically said about Anderson, they took back. The reason they took it back is because the statistics on Mr. Kilpatrick's calculation showed that the confidence interval, the range of values, encompassed the 2000s. Is that margin of error, confidence interval? It's the margin of error, and that's undisputed. That's why the plaintiff's lawyers are running away, because that sale actually shows that it's evidence there was no diminution in value, because the sale price fell right where you would expect it to fall. Right. All I'm saying is that he does assert, generally and baldly, one, he did make an assessment of the Anderson property, and two, it showed post hoc a 13 percent diminution in value. That is post repair. He says that a couple of times. I thought what you were going to say to me is he may have said that, but there was no foundation for it for precisely the reason that Judge Anderson suggested. To it, he never did a before and after analysis, and so his opinion was of no moment. It wasn't methodologically grounded in the kind of study you would have to do. Have I misapprehended this? No, I agree with you, Your Honor. It's clear he did an assessment, an appraisal, in the unimpaired, the undamaged state. It's also clear that he never did that in the damaged and repaired state. He didn't ever do it. What I need, the reason I'm acknowledging this is I want to be candid with the record. He did point to that sale data. He says the sale data shows a diminution in value. But the reason that the district court said that doesn't create a fact issue is plaintiffs withdrew their reliance on that. If they hadn't done that, would you concede error then, if plaintiffs hadn't withdrawn that? If they hadn't withdrawn that and if the confidence interval didn't show that it was statistically meaningless, then we would confess error. How do you think this damage should have been proven? On this? Yeah. What kind of post, forget the pre-damage appraisal, just look at the post. How would you, how do you think it should have been done properly? Well, they should have looked at that sale, and that showed no damage, but then the sale's not enough because then you have to look at how much all of the new materials and new repairs brought it up, and you'd have to consider on the facts of Mr. Anderson's property whether there could possibly be enough stigma to take it back, not only down to value but below. So you don't quarrel with the fact you used the sale, the actual sales price as what a willing buyer and seller would sell for. You just think he didn't then back out the proper components. Had he done so, you would potentially agree that he had a case. Yeah, if a sale price showed a diminution in value, that'd be real information. Yeah, that'd be right. The two things here is the sale price showed no diminution in value, and he didn't account for all of the other factors. And you don't quarrel with the fact that you could take the standard housing index appreciations, multiply that by the original appraisal to come up with what would be the expected price of the sale. Oh, I got to, I have to think about that, Your Honor, but I don't think, I don't think it was part of our argument for summary judgment here that the baseline was off. No, no, I'm not talking about the baseline, but the escalation up to the actual sales price. If you escalated that by the housing market index, because Kilpatrick, his general system that he wants to rely on, does use that technique. Yeah, and I want to be careful, because I haven't thought specifically about that, Your Honor. So, I was glad, Judge Anderson, that you eventually did mention paragraphs 13 and 87 of the rebuttal report, because I think they're clear, very clear, that he did appraise, in fact, that's what he says in paragraph 13, I did appraise the Anderson property and determined the 13 percent diminished value. And as he points out, that was done as of the time of the loss. So he went back and looked at it. He goes on, however, in both 13 and 87, in both of those paragraphs, he flat says he made the, he says I appraised Anderson's house. But then, in each of those paragraphs, he goes on to say he appraised it on the basis of his contingent value survey, his data, some kind of data, he said, all of which made it clear that his opinion about 13 percent was based on other houses, not Anderson's house. Is that not clear? That's not accurate. He did actually perform an appraisal. He didn't go into the house to do that. And there's a reason for that. For diminished value, you aren't looking to see if the repairs were done well. Diminished value is defined in Georgia law. It's the intangible stigma from the fact that it had suffered the damage. So you assume that all the repairs brought it up to the same condition. And is there still a diminution in value just from the fact that it had gone through this damage in that house? Let me ask the question, counsel, this way. Did he make a before and after analysis? He absolutely did. Where does he say that? That's in paragraphs 13 and 87. It struck me that looking at that, what he said was, the only property value I have opined on thus far in this case is that of the Anderson property, which shows approximately 13 percent diminution in value post repair. And he repeats that it suffered a diminution in value of 13 percent. He says that repeatedly. But point me specifically to where he may have said, I made an analysis before and after. Okay. And his report discusses the process for an appraisal. And it is done on a repeat. But does he ever say specifically, I did a before and after? Yeah. Well, he explains it in paragraph 13. As I have opined elsewhere, diminution in value appraisals are performed on a before and after basis. And as such, the effective date of the appraisal should be the same in both unimpaired and impaired conditions to isolate the market effect of diminished value to stigma from any market appreciation or other factors. That's the purpose of that statement in paragraph 13 of the rebuttal. I'm going to read you paragraph 13. I did appraise the Anderson property and determined that, based on the aggregation of evidence, including my reconciliation of case studies and the market data obtained from my prior survey, suffered, the Anderson home property suffered a diminution in value of 13 percent. I read that to clearly say that his opinion was based on what has happened in studies to other houses. Is there any other reasonable way of reading that? Well, yes. He appraised the Anderson property when he says that. That has a specific meaning. And then he reconciled it with those case studies and surveys. And we go through that in our brief, how, you know, that is, there's evidence of that in the record. So the purpose is— That's not what he said. He said, I appraised it and determined that based on what I just said. He doesn't say based on any examination of the property. And, again, in paragraph 87, he says, based on my expertise and experience in the appraisal field and having appraised impaired properties for over 30 years, I concluded to a reasonable degree of appraisal certainty that the Anderson property sustained a diminution in value of approximately 13 percent. It's, you know, using that word appraisal, you know, means something in the appraisal field. That means he conducted an actual appraisal. You know, the fact that he didn't walk into the house and inspect the repairs, you know, if you go back and it's mentioned in the record in this case, there was the CHIS case, and those appraisals were performed simply through desk assessments and appraisals. And that's a valid way of doing it. And reconciling using case studies and literature and surveys are all recognized bases in the appraisal field for doing an appraisal. So, yes, he did an appraisal. Thank you, sir. Thank you, Your Honors.